UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-343-KSF

TERESA T. CARTER                                                                         PLAINTIFF

v.                                **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                                       DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Teresa T. Carter, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") based on disability. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Carter filed her claim for supplemental security income on April 24, 2001, alleging an onset date of April 10, 2000. After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on October 17, 2002. [TR 306] Carter subsequently requested review by the Appeals Council. The Appeals Council was unable to take action on Carter's request for review because the administrative record could not be located. [TR 324] Accordingly, the Appeals Council ordered that the record be reconstructed and that Carter be afforded a new hearing and decision on the issues raised in her application. [TR 324-25]

Carter subsequently appeared for another administrative hearing before the ALJ on April 27,

1

2005. [TR 773-89] An unfavorable decision was rendered by the ALJ on July 19, 2005. [TR 284-92] The Appeals Council denied Carter's request for review on August 6, 2007. [TR 6]  Carter has exhausted her administrative remedies and filed a timely action in this Court.  This case is now ripe for review under 42 U.S.C. § 405(g).

      At the time the ALJ rendered his decision, Carter was 39 years old. [TR 285]  Carter attended high school through the tenth grade, has earned her General Equivalency Diploma, and attended Southeast Community College for one year. [TR 747-48] She has past relevant work experience as a cashier, an accounts payable and data entry clerk, and customer service representative.  [TR 749-51] Carter claims that she is disabled due to depression, anxiety, bursitis, arthritis, back problems, ankle swelling, leg pain, sleep apnea, asthma, low blood pressure, migraine headaches, and kidney disease.  [TR 753-56]

      In support of her application for SSI benefits, Carter points to the following medical records as evidence of her alleged disability.  She specifically refers to records from Harlan ARH clinic relating to pain beginning on January 5, 2001. [TR 702-03].  On February 21, 2001, the record reflects bilateral leg/hip pain and decreased tolerance for walking. [TR 699].  Thereafter, on April 3, 2001, she was evaluated by Dr. Jaya Pampati, a rheumatologist, for pain in her back and lower extremities.  Dr. Pampati noted tenderness along her lumbar spine and a positive straight leg raising test, bilaterally at 45 degrees.  X-rays revealed degenerative disc disease with narrowing of disc space at L5-S1. [TR 476-77].  An MRI on May 1, 2001, reviewed by Dr. Nelson Yu, revealed "degeneration of L4-L5 and L5-S1 disc . . . with moderate central herniated nucleus pulposes at L5-S1. [TR 478]

      Carter was then referred to Dr. James Bean, a neurosurgeon, who had previously examined

her in 1993. [TR 352] He re-examined Carter on June 4, 2001, and determined that Carter was not a surgical candidate due to her "longstanding history of pain with multiple level involvement and body weight." [TR 492-93] Then, on August 13, 2001, she complained to Dr. Bean of bladder/bowel incontinence, numbness in her hands and legs and increased back/leg pain. [TR 490-93] Dr. Bean completed an assessment on August 23, 2001, which reflected that Carter was limited to lifting/carrying up to 15 pounds occasionally, 5-10 pounds frequently and standing/walking up to 6 hours with no longer than 30-60 minutes without interruption. He restricted Carter from climbing, balancing, stooping, crouching and crawling. [TR 354-55]

    Carter was seen at the Pain Management and Rehabilitation Center on September 26, 2001. She described a burning sensation in her hip region and a stabbing pain in the back, aggravated by standing, walking, bending, or any associated activity. Her physical examination revealed facet tenderness bilaterally from L3 to S1, much greater on the left side. The record also notes left sacroiliac joint tenderness. An upper extremity examination revealed evidence of carpal tunnel syndrome including positive Tinel's at both wrists, decreased grip strength bilaterally and decreased sensation over the forearm, more prominent on the right. According to Dr. Donald Douglas, Carter suffers from: (1) lumbar degenerative disc and joint disease from L4 through S1, with L5-S1 herniated nucleus pulposes; (2) lumbar vertebral facet arthropathy with pain, much greater on left; (3) bilateral tronchanteric bursitis, greater on the left; and (4) left sacroiliac join arthropathy with pain. [TR 503-05] Dr. Douglas recommended injection therapy, which Carter underwent on October 15, 2001. [TR 495-96] Although she was advised to return in three to four weeks for a possible repeat injection, there is no evidence that she returned for follow-up or a repeat injection.

    Also during this time, Carter was treated by Dr. Jose Echeverria, a primary care physician.

In early 2002, Carter was treated on multiple occasions in 2002 for chest pain. Physicians concluded that the chest pain was non-cardiac in nature. [TR 599-603] Throughout 2004 and 2005, Carter complained to Dr. Echeverria of severe back pain and treatment notes indicate persistent back pain and tenderness upon palpation of the paraspinal muscles. [TR 232-50] On April 1, 2005, Dr. Echeverria opined that Carter is "not able to have productive employment for the next 6 months or in the foreseeable future." He noted her need for "constant medical supervision because of her multiple medical problems," including morbid obesity, obstructive sleep apnea, brochial asthma/COPD, osteoarthritis producing back pain, history of bigeminy with normal cardiac catheterization, diabetes, type 2 and gastritis/duodenitis. [TR 393]

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2) If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age,

education, skills, etc), he is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The ALJ began his analysis at step one by determining that Carter has not engaged in any substantial gainful activity since her alleged onset date of October 15, 1994. [TR 291] At step two, the ALJ found that Carter suffers from the severe impairments of obesity, sleep apnea, asthma, recurrent urinary tract infections, degenerative disc disease from L4-S1, herniated nucleus pulposus at L5-S1, diabetes mellitus controlled with medication and diet, a hiatal hernia, and a late onset dysthymic disorder. [TR 291] Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments. [TR 291]

At the fifth and final step, relying on the testimony of the Vocational Expert ("VE") and taking into consideration Carter's age, educational background, past relevant work experience, and residual functional capacity ("RFC"), the ALJ found that Carter was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied her claim for SSI. [TR 291] An RFC is the assessment of a claimant's maximum remaining capacity

5

to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ found that Carter has the RFC to perform the exertional and nonexertional demands of sedentary work except that which includes more than occasional kneeling, with no climbing, stooping, bending, crouching, and crawling. Carter also requires a sit/stand option at will and must avoid hazardous work and vibration. [TR 291]

Based on this RFC, the ALJ found that Carter is unable to return to her past relevant work. [TR 291] Considering the testimony of the vocational expert, the ALJ found that Carter is capable of making a vocational adjustment to other work. The ALJ noted that under the Medical-Vocational Guidelines, if Carter were capable of performing a full range of sedentary work, a finding of not disabled would be mandated. However, because her ability to perform a full range of sedentary work is limited by some exertional limitations, the ALJ relied on the testimony of a Vocational Expert ("VE"), who testified that given Carter's age, education, past relevant work experience and RFC, Carter maintains the capacity for limited sedentary work that exists in a significant number in the economy. [TR 290-91] Consequently, the ALJ determined that Carter was not disabled within the meaning of the Social Security Act. [TR 291]

The ALJ's decision that Carter is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on August 6, 2007. [TR 6] Carter has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

II.     **GENERAL STANDARD OF REVIEW**

The decision of the Commissioner must be supported by substantial evidence. *Varley v.*

*Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### III.  OPINIONS OF TREATING PHYSICIANS

On appeal, Carter argues that the ALJ's determination was not based on substantial evidence or decided by the proper legal standards. Specifically, Carter argues that the ALJ failed to accord appropriate weight to the disabling opinion of her treating doctor, Dr. Echeverria.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comissioner of Social Security*, 127 F.3d 525, 530-31 (6th Cir. 1997); *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)("The medical opinions and diagnoses of treating physicians are generally accorded substantial

deference, and if the opinions are uncontradicted, complete deference"). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . ." 20 C.F.R. § 404.1527(d)(2). Thus, when weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

In the Sixth Circuit, however, a treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings, and is consistent with other

8

evidence of record. *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th cir. 1984); *Crouch v. Secretary of Health and Human Services*, 909 F.2d 852, 856 (6th Cir. 1990); *see also*, 20 C.F.R. §§ 416.927(b), (d)(2), (3)-(4). The Commissioner is not bound by a mere conclusory statement of a treating physician, particularly where it is unsupported by detailed, objective criteria and documentation. *See Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). In other words, the supportability of a treating physician's opinion depends on the degree to which the source presents relevant evidence to support the opinion, and in particular, support the opinion with medical signs and laboratory findings. 20 C.F.R. §§ 416.927(a), (d)(3). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *2 (1996).

Carter argues that based on *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), the ALJ failed to explain why he rejected Dr. Echeverria's disabling opinion. In *Wilson*, the Sixth Circuit held that if an ALJ declines to accord controlling weight to a treating physician opinion, the ALJ must give good, specific reasons for the weight accorded the opinion. *Wilson*, 378 F.3d at 544. This is essentially a procedural safeguard, ensuring that a claimant understands the disposition of her case, and that the ALJ applied the treating physician rule so as to provide meaningful judicial review of that application. *Wilson*, 378 F.3d at 544-45.

This case, however, is distinguishable from *Wilson*. In *Wilson*, the ALJ summarily dismissed the opinion of the treating physician without providing adequate reasoning. *See Wilson*, 378 F.3d at 545. In this case, the ALJ decision shows: (1) that the ALJ thoroughly evaluated Dr. Echeverria's

treatment record; and (2) that the ALJ, after discussing Dr. Echeverria's April 1, 2005 opinion, properly declined to accord the opinion controlling weight and articulated specific and good reasons for doing so. Specifically, the ALJ indicated that the restrictions discussed by Dr. Echeverria in his April 1, 2005, medical opinion were based primarily on the subjective complaints of Carter, and were not substantiated by the objective medical evidence of record. [TR 289] Thus, the ALJ properly complied with *Wilson*.

Additionally, substantial evidence supports the ALJ's decision to reject Dr. Echeverria's conclusory medical opinion of April 2005. Dr. Echeverria indeed has a longstanding relationship with Carter, treating her on a monthly basis for her chronic medical conditions. Carter has repeatedly complained to Dr. Echeverria of numerous symptoms and has been diagnosed with a variety of ailments; however, neither her complaints nor her diagnoses establish that she is as limited as Dr. Echeverria opined. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition"). Considering the record as a whole, including the medical evidence as well as other evidence related to her activities of daily living, her complaints of disabling pain and conditions are simply unsupportable. Importantly, as the ALJ pointed out, Carter's subjective complaints of pain were not fully credible due in part to her reported activities of daily living, which include assorted household chores, driving, socializing with friends and family, managing money, and attending church. [TR 288]

Moreover, no other physician who has treated Carter has determined that she is unable to work - Dr. Echeverria's opinion stands alone. It is also significant that Dr. Echeverria's opinion is contradicted by the opinion of Dr. Bean, a neurosurgeon, who examined Carter once in 1993, and twice in 2001 [TR 352, 490-93], and by Dr. Eskander, a psychiatrist, who examined Carter in 2000

and 2001. *See* 20 C.F.R. §§ 416.927(d)(3), (4); *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390-91 (6th Cir. 2004); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529, 30 (6th Cir. 1997); *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); *Bogle v. Sullivan*, 990 F.2d 342, 347-48 (6th Cir. 1993). Their opinions, both as specialists and as physicians who treated Carter on more than one occasion, must also be carefully weighed.

For these reasons, the ALJ did not err in failing to accord Dr. Echeverria's opinion controlling weight. By explicitly addressing Dr. Echeverria's opinion and setting forth good reasons for not according it controlling weight, the ALJ fully complied with the procedural safeguards set out in the regulations and *Wilson*. Additionally, substantial evidence supports the ALJ's decision to reject Dr. Echeverria's opinion.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that the decision of the Commissioner is **AFFIRMED** as it was supported by substantial evidence and was decided by proper legal standards.

This May 12, 2008.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**

11